**UNITED STATES of America,**
**Appellant,**

v.

**Amos R. MORIN, Appellee.**

**No. 14627.**

United States Court of Appeals
Ninth Circuit.

Jan. 31, 1956.

See also, 221 F.2d 800.

C. E. Luckey, U. S. Atty., Victor E. Harr, Asst. U. S. Atty., Portland, Or., for appellant.

Ryan & Pelay, John D. Ryan, Thomas H. Ryan, Portland, Or., for appellee.

Before HEALY and ORR, Circuit Judges, and BYRNE, District Judge.

ORR, Circuit Judge.

This appeal deals almost exclusively with the sufficiency of the evidence to support the findings. It is an action for damages for negligent care given appellee, after sustaining injuries in an accident, by doctors of the United States Public Health Service. Suit was brought under the provisions of the Federal Tort Claims Act, 28 U.S.C.A. §§ 2671 through 2680. Pursuant to 28 U.S.C.A. § 2402 trial was before the court sitting without a jury.

Appellee Amos R. Morin, hereafter Morin, was on June 10, 1952 employed as a seaman on a dredge owned and operated by the United States Army Engineers. About noon on that date Morin was injured in a fall from a ladder. He was at the time of the accident off duty and working at his home in Portland, Oregon. Morin's left leg caught between the lowest rungs of the ladder resulting in a compound fracture of the left tibia and other injuries. A physician was immediately summoned and Morin was removed by ambulance to the Physicians and Surgeons Hospital in Portland, which hospital was under contract with the United States Public Health Service. Morin, by reason of his employment, was admittedly entitled to the facilities and services of the Public Health Service.

Morin, shortly after 1:00 P.M. on the day of admittance, was taken to emergency surgery. There, the resident physician conducted an initial examination

and antiseptically cleansed the wounds and also administered antibiotics and gave the patient morphine to alleviate the severe pain he was suffering. X-rays were taken and the leg was immobilized by splint and compression bandages. Morin's blood was typed as part of the preparation for blood transfusion should severe shock make one advisable.

After administering the treatment described above the resident physician reported by telephone to the staff physician of the United States Public Health Service under whose name Morin had been admitted to the hospital and whose patient Morin, according to medical practice, was thereafter considered to be. The resident physician informed the staff physician of his observations as to the patient's condition and gave the details of the emergency treatment that he had given. The staff physician instructed him, the resident physician, to telephone the general surgeon who served as consultant to the Public Health Service. The general surgeon was notified of the patient's condition and of the treatment that had been administered.

Neither the staff physician of the Public Health Service nor the general surgeon visited Morin until the next morning, June 11, 1952. At that time Morin's condition was discussed and it was agreed to transport the patient to the Marine Hospital in Seattle, Washington for further treatment. Morin was taken by ambulance to the Seattle hospital where the fracture was reduced and the wound closed on June 12, 1952. A leg cast and a body cast were applied. Thereafter a sliding bone graft was made and an Eggers plate was applied to the shin.

Morin remained in Seattle until August 17th at which date, acting against the advice of attending physicians, he quit the hospital and returned by automobile to Portland. At Portland Morin immediately consulted his family physician, Dr. Thorup, who prescribed penicillin. Dr. Thorup associated Dr. Howard L. Cherry who is conceded to be one of the leading orthopedists in Port-

land and who subsequently treated Morin's leg. Dr. Cherry manipulated the leg to correct angulation and later removed the Eggers plate in an effort to control infection present in the wound. Dr. Cherry testified that in his opinion this infection was present from the first time he examined the leg.

Morin was required to undergo a protracted series of operations and other treatments. The court found that osteomyelitis developed, that the limb was permanently impaired and that Morin will be required to undergo further operations in the future.

The District Court found that the United States, acting through its agents, treated the plaintiff's injuries in a negligent and careless manner in that they failed to immediately and adequately cleanse, debride and close the wound and generally in failing to exercise due care in the treatment of the fracture. The court further found that the said negligence was the proximate cause of the subsequent failure of the bone to properly knit and the wound to properly heal resulting in needless pain and suffering to Morin as well as added expense.

The Government challenges these findings on the grounds that the evidence failed to establish negligence and that there was no sufficient showing of proximate cause. The Government further contends that the money judgment was excessive and that the court's finding that plaintiff will be forced to undergo further operations finds no support in the evidence.

Of course it is well settled that the scope of our inquiry is limited to an inquiry as to whether the evidence supports the findings. The court found that the immediate treatment given to Morin's wounds and to the compound fractures of the left tibia was negligent. This negligence resided more in what was not done than what was done. There is substantial evidence to the effect that the treatment given failed to measure up to reasonable standards of due care and professional skill. Evidence to the contrary appeared but we

cannot usurp the function of the trial court and weigh the evidence.

Dr. Cherry in his testimony emphasized the seriousness of the compound fracture. He testified that he regarded it as the "universally shared" opinion of the medical profession that immediate cleansing of the wound to the depth and closing of it are vital. He further emphasized the element of time as being of the essence in treating a compound fracture. His testimony was that the delay on the part of the consultant physicians in properly cleansing and closing the wound greatly increased the danger of infection and was in violation of accepted medical practice. He further testified that he did not regard the danger of shock in this case as sufficiently serious to justify delaying treatment. In the light of this testimony we cannot say that the finding of the court as to negligence was clearly erroneous.

The Government further contends that the evidence did not support the court's finding that negligence if any in the performance of the initial treatment was the proximate cause of the infection which subsequently appeared. There is evidence to the effect that failure to immediately cleanse and close the wound greatly increased the danger of infection. There is evidence that the ambulance ride to Seattle aggravated the injuries. The records of the Seattle hospital disclose that an intern expressed the opinion that the leg was infected. Further testimony appears that on the day after Morin left the Seattle hospital he visited Dr. Thorup, his family physician, who immediately prescribed penicillin. This, according to medical testimony before the trial court indicates the presence of an infection at that time. A few days after Morin returned to Portland he was examined by Dr. Cherry. Dr. Cherry testified that at that time he found infection, stating that, "It looked critical, that the whole thing might break down." This evidence is substantial and supports the finding that a continuous course of infection existed from the time of the initial treatment.

Dr. Cherry gave as his opinion that the early treatment of the plaintiff's leg was the responsible cause of his present condition. We are persuaded that there is sufficient evidence to support the trial court's finding of proximate cause.

Appellant's remaining contentions may be summarily disposed of. In assessing damages the trial court was entitled to weigh and consider the prolonged treatment that the plaintiff had been required to undergo, plaintiff's pain, suffering and disfigurement and the probability, sufficiently established by the medical testimony, that future operations would be necessary. In the light of these circumstances we do not think the damages awarded were excessive.

The judgment is affirmed.